UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TERESA MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:21-cv-01713-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION[1]

Plaintiff Teresa Mitchell ("Mitchell") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income benefits ("SSI"), a period of disability, and disability insurance benefits ("DIB"). (Doc. 1). Mitchell timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED** and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

Mitchell filed applications for a period of disability, DIB, and SSI on July 9, 2018, alleging an initial onset date of May 6, 2018. (Tr. 296, 306). The Commissioner denied her claim on September 19, 2018 (tr. 222), after which Mitchell requested a hearing with an Administrative Law Judge ("ALJ"). (Tr. 229–30). At the September 12, 2019 hearing, the ALJ approved a request

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

from Mitchell to amend her alleged onset date to July 8, 2018. (Tr. 132, 156, 348). On October 23, 2019, the ALJ denied Mitchell's claim. (Tr. 147).

Mitchell requested review of the ALJ's decision by the Appeals Council, but it denied her request on June 24, 2020. (Tr. 13). On that date, the ALJ's decision became the final decision of the Commissioner. (*Id.*). The Appeals Council twice extended Mitchell's time to file a civil action (tr. 1, 10), and on December 29, 2021, within the thirty-day period permitted by the second extension, Mitchell initiated this action. (Doc. 1).

Mitchell was 46 years old on the date the ALJ rendered her decision. (Tr. 145). Mitchell has at least a high school education and previously worked as a hardware supervisor at a home improvement store and a commercial and residential cleaning associate. (Tr. 157–58, 351, 374).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

    (4)    whether the claimant can perform his or her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Mitchell met the insured status requirements of the Social Security Act through December 31, 2022, and that Mitchell had not engaged in substantial gainful activity since July 8, 2018, the amended alleged onset date of her disability. (Tr. 134).

At Step Two, the ALJ found that Mitchell has the following severe impairments: degenerative disc disease of the cervical spine, recurrent incisional hernias, disc protrusion of the thoracic spine with stenosis and possible cord compression, and mild to moderate lumbar spondylosis. (*Id.*)

At Step Three, the ALJ found Mitchell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 142).

Before proceeding to Step Four, the ALJ determined Mitchell's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Mitchell has the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except no climbing of ladders, ropes, or scaffolds; no more than occasional kneeling, crouching, and crawling; no work around excessive vibration or unprotected heights or work around hazardous machinery; No operation of foot controls; and she should avoid concentrated exposure to extreme heat, extreme humidity, and pulmonary irritants such as fumes, odors, dust, gasses, and poorly ventilated areas.

(Tr. 142).

At Step Four, the ALJ determined that Mitchell is unable to perform any past relevant work. (Tr. 145). At Step Five, the ALJ determined, considering Mitchell's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mitchell could perform. (*Id.*). Therefore, the ALJ determined that Mitchell has not been under a disability from May 6, 2018, through the date of its decision and denied Mitchell's claim. (Tr. 146).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mitchell contends that the ALJ erred in evaluating the medical opinions of Dr. Vishala Chindalore, Mitchell's rheumatologist. (Doc. 18 at 8–13). Specifically, Mitchell contends the ALJ

5

failed to adequately address whether limitations imposed in Dr. Chindalore's opinions were consistent with or supported by the record. (*Id.*).

For claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including, but not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). In articulating an opinion's persuasiveness, the ALJ must explain how he or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Dr. Chindalore, a licensed rheumatologist, evaluated Mitchell at least three times between April 30, 2019, and June 25, 2019. (Tr. 1118–33). During his initial examination of Mitchell on April 30, 2019, Dr. Chindalore noted that Mitchell had been referred to him because her pain "ha[d] become much worse lately." (Tr. 1124). At this visit, Dr. Chindalore indicated that Mitchell

presented with fatigue, sicca symptoms,[4] photosensitivity, rash, back pain, joint complaint, joint pain, joint stiffness, neck pain, and shoulder pain. (Tr. 1125). He also noted Mitchell was positive for all fibromyalgia trigger points and was experiencing ankle swelling, back and muscle spasms, "swelling and deformities" of both hands, crepitus in both knees, and osteoarthritic changes. (Tr. 1126). He specifically observed that Mitchell's range of motion for all extremities was "painful" and that she presented with a "clinical picture" of lupus, fibromyalgia, and osteoarthritis. (Tr. 1125–26). During that visit, he ordered laboratory testing for lupus, fibromyalgia, and other autoimmune conditions and x-rays of Mitchell's hands, knees, and hips. (Tr. 1126–27)

At a follow-up examination of Mitchell on May 16, 2019, Dr. Chindalore noted that Mitchell's lab tests were negative for lupus and rheumatoid arthritis. (Tr. 1121). X-rays revealed "mild arthritic changes." (Tr. 1121). Dr. Chindalore once again indicated that Mitchell presented with fatigue, sicca symptoms, photosensitivity, rash, back pain, joint complaint, joint pain, joint stiffness, neck pain, and shoulder pain. (Tr. 1123). He also noted symptoms of widespread pain, diffuse tenderness, and generalized fatigue. (Tr. 1121).

Dr. Chindalore examined Mitchell a third time on June 25, 2019. (Tr. 1118). During that encounter, Mitchell described her pain as aching and constant. (*Id.*). Dr. Chindalore noted that Mitchell still presented with fatigue, sicca symptoms, photosensitivity, back pain, joint complaint, joint pain, joint stiffness, neck pain, and shoulder pain. (Tr. 1119). She also presented with sleep disturbance. (Tr. 1119).

---

[4] Sicca syndrome is another name for Sjögren's syndrome, an autoimmune disorder that causes symptoms such as dry mouth and dry eyes. *See Sjögren's Syndrome*, PENN MEDICINE, https://www.pennmedicine.org/for-patients-and-visitors/patient-information/conditions-treated-a-to-z/sjogrens-syndrome (last updated May 2, 2021).

Dr. Chindalore also provided two medical source statements, one regarding lupus and the other regarding fibromyalgia. (Tr. 144, 1144–1146, 1147–49). Both are dated August 20, 2019. (Tr. 1146, 1149). In the statement regarding lupus, Dr. Chindalore noted that Mitchell suffered from lupus and exhibited severe joint pain and joint inflammation in both hands, both wrists, both shoulders, both knees, and her spine. (Tr. 1144). He also indicated that Mitchell was unable to ambulate effectively and that Mitchell could never stoop and could only occasionally bend. (Tr. 1145). In the statement regarding fibromyalgia, Dr. Chindalore noted that Mitchell exhibited a history of widespread pain for three or more months, pain in eleven or more pressure points, stiffness, sleep disturbance, chronic fatigue, memory loss, and an inability to ambulate effectively. (Tr. 1147). He opined that Mitchell could only occasionally bend or stoop. (Tr. 1148).

> The ALJ stated the following in evaluating Dr. Chindalore's medical opinions:
>
> There are two Medical Source Statements from Dr. Chindalore in the record. As discussed previously, Dr. Chindalore stated that the claimant cannot work because of lupus and fibromyalgia but there is no evidence of lupus and his own notes stated that the claimant is negative for lupus according to lab results. The notation of fibromyalgia is only in his notes and not mentioned anywhere else in the record. A diagnosis of fibromyalgia is also not supported by the record as discussed previously. His opinions regarding lupus and fibromyalgia are thus not persuasive. In addition, his statement that the claimant has an inability to ambulate effectively is not supported by the gait findings in the record as discussed previously. Dr. Chindalore also found limitations in standing, sitting, and lifting which are not supported by the great weight of the record including the normal strength findings, the findings of stable pain, and her reported activities of daily living. His opinions are not consistent with the great weight of the overall record and are thus not persuasive.

(Tr. 144–45) (internal citations to the record omitted).

Mitchell contends the ALJ erred in evaluating Dr. Chindalore's medical opinion because the ALJ did not individually address the supportability and consistency of each limitation set forth by Dr. Chindalore. The regulations do not explicitly require an ALJ to do so. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the regulations state that an ALJ is "not required to

8

articulate how [they] considered *each medical opinion* . . . from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (emphasis added). Dr. Chindalore's statements about Mitchell's limitations in bending, stooping, reaching, and absenteeism are each aspects of Dr. Chindalore's medical opinion, but Dr. Chindalore himself is one medical source. *See* 20 C.F.R. §404.1502(d). The ALJ was not required to individually examine and explain the supportability and consistency of each limitation Dr. Chindalore proposed—at least as long as the reviewing court can determine how the ALJ reached her conclusions.[5] Here, it is reasonably clear why the ALJ discounted Dr. Chindalore's opinions: the ALJ found them inconsistent with and unsupported by "the great weight of the record including the normal strength findings, the findings of stable pain, and her reported activities of daily living." (Tr. 144–45).

That said, the portions of the records the ALJ relied upon must genuinely conflict with the opinion she discounts. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021).[6] At a minimum, the ALJ's assessment of Mitchell's activities of daily living does not meet this bar. The undersigned assumes the ALJ found Dr. Chindalore's opinions inconsistent with those activities as the ALJ previously analyzed them: in the context of Mitchell's back pain (tr. 144).[7] However, in assessing whether Mitchell's back-related impairments produced disabling

---

[5] Mitchell appears to argue that the ALJ implicitly accepted limitations in Dr. Chindalore's opinion by addressing the opinion as a whole rather than limitation-by-limitation. (Doc. 18 at 12) ("[B]ecause the ALJ did not address these additional limitations, it is unclear why these limitations were omitted from the RFC."). Mitchell points to no authority supporting this argument.

[6] In *Simon*, the Eleventh Circuit considered an ALJ's analysis under then-applicable regulations requiring the ALJ to defer to a treating physician except in some circumstances. It ultimately held that there must be a genuine conflict between a physician's opinion and other evidence in the record for an ALJ to appropriately find inconsistencies between the two. 7 F.4th at 1108. While the now-superseded legal standard analyzed in *Simon* is not applicable here, its logic is still persuasive when evaluating claimed inconsistencies in the record.

[7] The Commissioner argues the ALJ did not err in evaluating Dr. Chindalore's opinion because Dr. Chindalore's opinion regarding Mitchell's diagnoses for lupus and fibromyalgia were

9

limitations, the ALJ mischaracterized Mitchell's reported activities of daily living. (Tr. 144–45). Specifically, the ALJ relied on the fact that Mitchell "reported that she can drive, shop in stores, and handle her finances" in finding that Mitchell's back-related impairments were inconsistent with her activities of daily living. (Tr. 144). Mitchell did in fact indicate in her Function Report that she can drive and handle her finances (tr. 385), but neither of these appear to relate to the specific physical limitations alleged here.  As to the only daily activity that plausibly bears on limitations from Mitchell's back pain or other physical symptoms, Mitchell stated she could *not* shop in stores, declining to check a box indicating that she shops in stores and writing "I don't go to stores to[o] much walking." (*Id.*). Instead, Mitchell reported that she does her shopping by phone and by computer rather than in stores. (*Id.*). It is difficult to say how much of the ALJ's assessment of Mitchell's limitations relied on Mitchell's supposed ability to shop in stores, but this was the only specific activity cited by the ALJ that appears to bear on Dr. Chindalore's bending, stooping, and reaching limitations.[8]

---

not consistent with other evidence in the record. (Doc. 23 at 9). The consistency of Mitchell's *diagnoses* is irrelevant, however, as the ALJ found in rejecting those diagnoses that Mitchell's other "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" of lupus and fibromyalgia. (Tr. 143). Because the ALJ found some of Mitchell's other impairments severe at Step Two and found that these impairments could reasonably be expected to cause limitations, it is the consistency of Dr. Chindalore's opined limitations that matters.

[8] Mitchell also stated multiple times that she experiences at least some level of limitations in standing, sitting, and lifting. Mitchell indicated that she can only do chores for ten to fifteen minutes because she "can't stand long" before her "right leg gives out on [her]." (Tr. 384). She explained that she does not do house or yard work because she "can't stand or walk very long" before her "leg gives out." (Tr. 385). Mitchell checked boxes indicating that her conditions affect her ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs. (Tr. 387). She further explained that she "can't walk very far" because her "sciatic nerve has [her] right leg to where it will give out on [her] and that she had fallen at least twice as a result. (Tr. 387). While the ALJ may have determined other evidence undermined these claims, it is impossible to say how much the ALJ's erroneous conclusion that Mitchell reported she could shop in stores weighed against them.

The undersigned cannot determine whether the ALJ would have concluded Dr. Chindalore's opinion was inconsistent with the record or that bending, stooping, and reaching restrictions should not be incorporated into Mitchell's RFC had she not mischaracterized Mitchell's activities of daily living. It is certainly *possible* she would have, but the court's role is not to weigh the evidence. *Walden*, 672 F.2d at 838. Accordingly, remand is warranted. On remand, the Commissioner should reassess the evidence, including opinion evidence, in light of the functional limitations Mitchell actually reported.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Mitchell's claim for a period of disability and disability insurance benefits is **REVERSED**, and this action is **REMANDED**.

DONE this 27th day of March, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE